[Sac. No. 6521. In Bank. Apr. 29, 1955.]

ROQUE ARANDA, Respondent, v. SOUTHERN PACIFIC COMPANY (a Corporation), Appellant.

Devlin, Diepenbrock & Wulff and Arthur B. Dunne for Appellant.

Nathaniel S. Colley and Mamoru Sakuma for Respondent.

GIBSON, C. J.—Plaintiff brought this action under the Federal Employers' Liability Act, seeking recovery for injuries sustained while working as a molder of freight car wheels in a foundry operated by defendant railroad company. He set forth three causes of action in his complaint, alleging that his injuries resulted, first, from negligent operation of a crane, second, from negligent maintenance of the crane, and, third, from failure to provide him with a safe place to work. The court, sitting without a jury, determined that the federal act was applicable, and the case then proceeded to trial before a jury on the other issues. A verdict was returned for plaintiff, and judgment was entered accordingly. Defendant appeals, contending that the federal act was not applicable and that there was not sufficient evidence to warrant submission to the jury of the issues raised by the third cause of action.

Applicability of the Federal Employers' Liability Act depends on whether plaintiff's duties were in the furtherance of interstate commerce or affected it "in any way directly or closely and substantially." (*Gileo v. Southern Pac. Co., ante*, p. 539 [282 P.2d 872] ; 45 U.S.C.A. § 51.) The freight car wheels which he molded were manufactured in accordance with annual orders from defendant's store department. Although the amount of production varied according to current demand, the wheels were not made for particular railroad cars and were taken, when completed, to defendant's storehouse. A few were sold to other companies, but almost all were sold to the Southern Pacific Equipment Company, a subsidiary of defendant, for construction of new cars or were used by defendant for maintenance purposes, including replacement of wheels on cars which defendant already operated in interstate commerce.

Federal coverage has been extended to employees injured while performing duties similar to those involved here. (*Shelton* v. *Thomson*, 148 F. 2d 1 [operating a crane located in a storehouse, to lift freight car wheels used to repair cars, including some which were operated in interstate commerce]; *Ericksen* v. *Southern Pac. Co.*, 39 Cal.2d 374 [246 P.2d 642] [inspecting lumber for fitness as railroad ties, some of which would cross state lines and would be used to repair tracks carrying interstate traffic]; *Trucco* v *Erie R. Co.*, 353 Pa. 320 [45 A.2d 20] [constructing "strap hangers" used to replace parts of engines, some of which were devoted to interstate commerce].) In the present case, some of the wheels which plaintiff molded were to be used in repairing railroad cars moving in interstate commerce, and the importance of his work to that commerce was not reduced by the fact that the wheels were temporarily stored before being used. We are of the opinion that plaintiff's duties furthered interstate commerce. He is, therefore, considered to have been employed by defendant in interstate commerce and is entitled to the benefits of the act. (*Gileo* v. *Southern Pac. Co., ante,* p. 539 [282 P.2d 872].)

It is conceded that the evidence is sufficient to support the verdict based upon the first and second causes of action in which it was alleged that plaintiff's injuries resulted from the negligent operation of a crane and from the negligent maintenance of a crane. It is contended, however, that there was no evidence that defendant failed to provide plaintiff with a safe place to work, as alleged in the third cause of action and that the court erred in submitting this issue to the jury. Plaintiff worked near a large crane which stood in a circular area at the center of two concentric rings of wheel molds. Access to the crane through the double ring of molds was afforded by two openings, each 21 feet wide. The crane was equipped with a horizontal boom and with a cable which was attached to the end of the boom and was strung down through several pulleys to a hook. Molten metal was carried from a furnace to the 21-foot openings by means of a bucket-shaped ladle placed on a movable platform. When the molder and his helper were ready to fill the molds, the crane hook was fastened to the handle of the ladle, and the crane raised the ladle vertically and maintained it in a position several inches above the molds. The ladle, which was about two feet in diameter, was open at the top and was designed to drain from the bottom. The molder was required to be close to the

ladle in order to adjust it over each mold and to fill the mold by opening the stopper at the bottom of the ladle.

At the time of the accident, plaintiff was standing between the inner and outer rings of molds and was preparing to open the stopper. The cable attached to the end of the boom slipped from three clamps which were holding it, and the ladle dropped against a mold, tipping and spilling the contents of the ladle. Plaintiff, in attempting to escape from the molten metal, jumped over the inner ring of molds and landed in some of the spilled metal, suffering severe burns.

██ The degree of care required by the Federal Employers' Liability Act is that which a person of ordinary prudence would have exercised under the circumstances, and although there was no proof as to the practice in the industry with respect to the method commonly employed in the molding of wheels, evidence of custom is not indispensable. (*Chicago, M. & St. P. Ry. Co.* v. *Moore,* 166 F. 663, 668 [92 C.C.A. 357, 23 L.R.A.N.S. 962].) The fact that the metal was drained from the bottom of this container permitted an inference that, once the ladle was filled, a lid could have been placed on it without impeding the molding process. Pictures of the ladle and of the manner in which it was used were shown to the jury, and we cannot say as a matter of law that the jury could not properly conclude that it was feasible to equip the ladle with a lid which would have prevented the accident and that, in view of the hazard to workmen, defendant should have provided such a lid. Accordingly, the issues raised by the third cause of action were properly submitted to the jury.

The judgment is affirmed.

Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Schauer, J., concurred.